# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS
PRICE DANIEL


July 8, 1948

Hon. John C. Marburger
County Attorney
Fayette County
La Grange, Texas

Opinion No. V-625

Re: Necessity for a Justice
of the Peace to hold an
inquest and fees for such
service.

Dear Sir:

You submit the following factual situations shown by the records of the Justice of the Peace and questions pertaining thereto:

Record entries:

"I was notified by phone by the local undertaker to hold an inquest. That a man identified as -- had died on the La Grange Public Square. Deceased had fallen on the sidewalk and had suffered with heart trouble. Information received from Dr. Frank Guenther, (physician and county health officer); A. V. Smith, Constable Precinct No. 1, T. J. Flournoy, sheriff, and other on the scene witnesses there was no evidence of any criminal action involved. The inquest was held at 5:30 p.m. Findings of the Justice of the Peace were and I repeat, 'I find the deceased died instantly from natural causes - Heart Attack.'

"About 7:30 p.m. Dr. A. called at my residence and informed me that I should go with him to Mr. B's Farm to hold an inquest on the body of Miss C. Miss C. had been killed by lightning. When we arrived at Mr. B's farm he informed us that Miss C. had taken a hoe with her and walked to the garden. After a short time it began to lighten and thunder. Mr. B. saw a flash of lightning near the garden and Miss C failure to return walked to the garden and saw her laying on her back with the hoe in hand clasped.

Dr. A and I examined her and are positive that she was killed by lightning. There were marks on the hoe handle showing where lightning struck."

Your questions are:

1. "Was it necessary that an inquest be held in either of the above fact situations?

2. "Would the Justice be entitled to an inquest fee in either case?

3. "Is the Justice of the Peace required to hold an inquest before he can issue a burial or removal permit where there is a county health officer and when there is no evidence or suspicion that the deceased died by violence, unlawful means or from an unnatural cause?"

Article 968 of Vernon's Code of Criminal Procedure authorizes the justice of the peace to hold an inquest in the following instances:

". . . 2. When any person is killed; or from any cause dies an unnatural death, except under sentence of the law; or dies in the absence of one or more good witnesses.

"3. When the body of a human being is found, and the circumstances of his death are unknown.

"4. When the circumstances of the death of any person are such as to lead to suspicion that he came to his death by unlawful means.

"5. When any person commits suicide, or the circumstances of his death are such as to lead to suspicion that he committed suicide.

"6. When a person dies without having been attended by a duly licensed and

practicing physician, and the local health
officer or registrar required to report the
cause of death under Rule 41a, Sanitary
Code of Texas, Article 4477, Revised Civil
Statutes, General Laws, Forty-sixth Legis-
lature, 1939, page 343, does not know the
cause of death. When the local health of-
ficer or registrar of vital statistics
whose duty it is to certify the cause of
death does not know the cause of death, he
shall so notify the Justice of the Peace
of the precinct in which the death occur-
red and request an inquest."

In Pierson v. Galveston County, 131 S. W. (2d)
27, the Court said in part:

"The holding of inquests upon dead
bodies is governed by Arts. 968-989 of the
Code of Criminal Procedure. Art. 968 gives
the circumstances under which the justice
is authorized to hold an inquest. Art. 975
reads: 'Witnesses shall be sworn and exam-
ined by the justice and their testimony re-
duced to writing by or under his direction,
and subscribed by them,' Art. 987 reads:
'The justice holding an inquest shall cer-
tify to the proceedings, and shall enclose
in an envelope the testimony taken, the
finding of the justice, the bail bonds, if
any, and all other papers connected with
the inquest, shall seal up such envelope
and without delay deliver it properly en-
dorsed to the clerk of the district court,
who shall safely keep the same in his office
subject to the order of the court.

"Art. 1053 provides: 'A justice of the
peace shall be entitled, for an inquest on a
dead body, including certifying and return-
ing the proceeding to the proper court, the
sum of five dollars, to be paid by the county.
. o o

"In no instance was any witness sworn
or any testimony transcribed. Nor was any
record made or certified from which the
names of the witnesses might be ascertained.

Pierson testified that he made no investigation in each case and satisfied himself as to the cause of death, and that there was no evidence of 'foul play.' Consequently he determined there was no necessity to take testimony or make any record or certificate except that above stated. He testified that in some instances he got his information over the telephone.

"Generally speaking, the purpose of a coroner's inquest 'is to obtain information as to whether death was caused by some criminal act and to obtain evidence to prevent the escape of the guilty, as well as to furnish the foundation for a criminal prosecution in case death is shown to be felonious.' 13 Am. Jur. p. 108. Further from the same text: 'It is necessary for a coroner to determine whether a statute contemplates the holding of an inquest in a particular case. . . Generally speaking, the determination of the question whether an inquest shall be held rests, within certain limitations, in the sound discretion of the coroner.'

"We think the evidence shows clearly that no inquest was held in any of the disputed cases. All Pierson did was to make an informal investigation to determine whether an inquest was necessary; and having reached the conclusion there was no evidence of 'foul play,' he determined that question in the negative and held no inquest. The statutory fee is for 'an inquest on a dead body, including certifying and returning the proceedings to the proper court.' This was not done in any of the disputed instances, and the statutory fee was not earned."

The first factual situation presented in your letter indicates that the deceased fell dead on a sidewalk in La Grange, in the presence of the sheriff, a constable and other witnesses. There, death was from natural causes, by reason of which it was not necessary

that an inquest be held in that case, and we answer your question concerning your first factual situation in the negative.

The second factual situation presented in your letter indicates that there was no witness to the cause of death of Miss C. The circumstances recited are persuasive but not conclusive, by reason of which the advisability of an inquest was within the sound discretion of the justice of the peace. Such was not mandatory as a matter of law.

There is no mention that any hearing was had, any witnesses examined, or their testimony reduced to writing and subscribed by such witnesses as provided by Article 975 of Vernon's Code of Criminal Procedure.

Article 987 requires the justice of the peace to certify to the proceedings and deliver the papers to the district clerk. Article 1053 provides that the justice of the peace for an inquest, including certifying and returning the proceedings to the proper court, shall receive the sum of ten dollars.

We hold that under the Pierson case above discussed and under the facts submitted, there was no inquest held and no necessity therefor, as contemplated by the Statutes. Your second question is therefore answered in the negative.

Rule 38a, Article 4477, Vernon's Civil Statutes, reads in part:

"That the body of any person whose death occurs in this state, or which shall be found dead therein, shall not be interred, deposited in a vault or tomb, cremated or otherwise disposed of, or removed from or into any registration district, or be temporarily held pending further disposition more than 72 hours after death, unless a permit for burial, removal, or other disposition thereof shall have been properly issued by the local registrar of the registration district in which the death occurred or the body was found."

Rule 36a of said article reads in part:

"For the purpose of this Act . . . in the Justice of the Peace Precinct, the Justice of the Peace shall be Local Registrar, and in cities of two thousand, five hundred (2,500) or more, according to the last United States Census reports, the City Clerk or City Secretary shall be the Local Registrar of Births and Deaths . . ."

Rule 41a of Article 4477, Vernon's Civil Statutes reads in part:

"In case of any death occurring without medical attendance, it shall be the duty of the undertaker or person acting as such to notify the local registrar of such death, and when so notified the registrar shall, prior to the issuance of permit, inform the local health officer and refer the case to him for immediate investigation and certification; provided that when the local health officer is not a physician, or when there is no such official, and in such cases only, the registrar is authorized to make the certificate and return from the statement of relatives or other persons having adequate knowledge of the facts; provided further, that if the registrar or the local health officer, as the case may be, as in doubt as to the cause of death, or if the case be one other properly referable to a Justice of the Peace for inquest into the cause of death, he shall then refer the case to a proper Justice of the Peace for inquest, investigation, and certification. And the Justice of the Peace or other proper officer whose duty it is to hold an inquest on the body of any deceased person, and to make the certificate of death required for a burial permit, . . ."

Opinion No. O-231 by a former Attorney General held that no duty is imposed on the justice of the peace to hold an inquest by said Rule 41a, Article 4477, but his duty in that regard is controlled by Article 968, Vernon's Code of Criminal Procedure. We enclose a copy of that opinion for your information.

We are of the opinion that a justice of the peace is not required to hold an inquest before he may issue a burial permit except as provided in Rule 41a of Article 4477, supra.

## SUMMARY

A Justice of the Peace was not justified in holding an inquest on the death of a man who fell dead on a sidewalk in the presence of the sheriff, constable, and other witnesses, and there was no question of any criminal action involved.

Where a woman took a hoe and went into her garden and was found dead in the garden shortly after a flash of lightning, with the hoe handle clasped in her hand and there were no witnesses to the death, the justice was authorized, in his sound discretion to hold an inquest to determine the cause of death. In such case, where the Justice of the Peace merely determined that there was no foul play and where no witnesses were sworn or examined by him and their testimony reduced to writing and subscribed by them, the Justice of the Peace is not entitled to fees for holding such inquests. Art. 975 C.C.P: Pierson v. Galveston County, 131 S. W. (2d) 27.

A Justice of the Peace is not required to hold an inquest before he may issue a burial permit but may do so in the exercise of sound discretion. C.C.P. Art. 968, et seq. Attorney General's Opinion O-231.

Yours very truly,

APPROVED:

*Fagan Dickson*

FIRST ASSISTANT
ATTORNEY GENERAL

ATTORNEY GENERAL OF TEXAS

By *W T Williams*

W. T. Williams
Assistant

WTW:wb
Encl.